Sneed, J.,
delivered the opinion of the court.
This action of trespass was brought by the plaintiff against the defendant to recover damages for the seizure, by defendant and others, of certain property of the plaintiff during the late civil war.
*421 After two mistrials in the Circuit Court of Weak-ley county, there was finally a verdict for the defendant, from which the plaintiff has appealed in error.
It is a ease of sharp and decided conflict of testimony, in which the jury has seen fit to give credit to the defendants’ witnesses, and there being some testimony to sustain the verdict and no preponderance against it, under the well established rules of this court the verdict cannot be disturbed, unless there be some error iii the charge of the court.
It appears that. the defendant Colgate Gardner, and six other Confederate soldiers, constituting a detachment of Confederate scouts, under Lieutenant Cunningham, started out from Trenton, Tennessee, for the avowed purpose of seizing and capturing a lot of' mules and guns which were in the possession of the plaintiff, and which, as it was alleged were being collected by him for the use of the Federal army. It is shown that the plaintiff was the friend and partisan of the Federal army, and a member of an organization called the “home guards,” and that he had been actually engaged in the capture of a Confederate soldier named Board, and had seized and taken possession of his mule, then supposed to be in his possession. Some of these allegations are denied by the plaintiff, but others prove them, and the plaintiff’s testimony is discredited by a large number of his neighbors, who swear -that they could not give him credit on oath. The party went to the plaintiff’s house, and some of them it seems, behaved in a rude and insulting manner, well deserving the penalty of a recovery in smart *422 money. The right to such a recovery however was waived by the plaintiff, and he only demanded compensation for the value of the property seized and carried away.
Among the property taken, were several mules and one or two guns. Other articles were taken, not appropriate trophies of war, but the defendant has been in no wise connected with other property taken than one of the mules.' It does not clearly appear what disposition was made of the mules, but it does appear that the detachment was in the active scout service of the Confederates at the time, and that the service was in great need of horses and mules for military purposes. The court charged the jury in substance, that if the property was being collected by either belligerent for war purposes, it was the subject of lawful seizure by the other. That if the plaintiff was a Federal soldier, or was acting as such in aggressive warfare upon the Confederates by capturing them or seizing their property, then it was lawful for the belligerents on the other side to do him all the harm they could for military puposes, but not for the purposes of private plunder, and that the defendant would not be liable for any improper act of plunder or pillage done by any other of the party, in ' which he was in no manner connected. The various propositions pf law pertinent to the case and arising out of the belligerent relation, were correctly charged, and it seems to us, with exceeding fairness to the plaintiff. It seems clear that the avowed purpose of the expedition was a lawful one under the laws of war, and *423 we do not see that the defendant has been connected with any unlawful diversion given by any of the party to the original lawful design. It will scarcely be contended that even an organized detachment of soldiers could be justified in allowing an opportunity to escape them to cripple the energies of an enemy in a state of war, simply because no orders from their common superior had anticipated the exigency which demanded their action in the interest of the service to which they belonged. While it is equally clear that such action must be bona fide for the public good, and not for purposes of private gain. The laws of war as well as the municipal law abhors the freebooter and the plunderer, and will in no case protect or justify the soldier who degrades himself into the robber.
In this case we understand that the plaintiff was in the attitude of actual hostility to the Confederate States, an active partisan, and also a soldier of the home guard service. Such, at least, is the proof which in the conflict of testimony the jury have seen proper to believe. He was also an occasional cap-turer of Confederate soldiers and sometimes seized their property, their mules or horses and took them to his own home, whether or not to turn them over to the government to which he adhered, or to appropriate them to his own use may be a matter of conjecture, but in either event, whether he is to be treated as a soldier operating in good faith for his own government, or as a common plunderer to put money in his purse, this property so collected was *424 the lawful subject of a capture or recapture by the adherents of the adverse belligerent. If the plaintiff did these things, he lost the character and forfeited the protection accorded by the laws of war to the non-combatant, and -he must take the consequences which the laws of war impose. Halleck, 333, 346. No doctrine is better established than that articles contraband of war in the hands of an enemy, or in the hands of a neutral but destined for the use* of an enemy are lawful subjects of capture by the adverse belligerent. Things and animals useful for military purposes, and so used or destined, are lawful trophies of war.
These mules, horses or guns collected for the use of an enemy or actually in the possession of an avowed enemy may be lawfully seized, upon the ancient principle as stated in the books, that “a state of war enjoins upon every subject to attack the subjects of the other prince seize on their goods and do them all the harm in their power.” Wheat. Inter. Law, 309. Nor is it essential that the partisan of one belligerent as against another, should be a regularly organized command to authorize them upon an emergency to exercise this duty and right, if they be soldiers or assume the character and responsibility of soldiers and in good faith for the public good, and not for private gain or other sinister motives. Because the allegiance of every citizen imposes upon him the duty of defending the government in a state of war.
Affirm the judgment.